UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                    )
DONDI BATES FORTUNE                 )
                                    )
            Plaintiff,              )
                                    )
      v.                            )    Civil Action No. 10-0856 (BAH)
                                    )
ERIC H. HOLDER, JR., *et al.*,      )
                                    )
            Defendants.             )
_____ )

**MEMORANDUM OPINION**

This matter is before the Court on the Defendants' motion to dismiss or, in the alternative, for summary judgment.[1] For the reasons discussed below, the motion will be granted.

I. BACKGROUND

The Plaintiff, a former employee of the Federal Bureau of Investigation ("FBI"), brings this employment discrimination action under Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, *see* 42 U.S.C. § 2000e *et seq.*, and the Rehabilitation Act, *see* 29 U.S.C. § 791 *et seq.* Compl. ¶¶ 1-2.[2] He alleges that the FBI discriminated against him based on his physical disability, culminating in his termination on October 26, 2008. *See generally id.* ¶¶ 2-5.

---

[1] Where, as here, the Defendant's motion to dismiss references attachments that are outside the pleadings, the motion "must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d). In light of the court's ruling on the Defendant's motion for summary judgment, its motion to dismiss under FED. R. CIV. P. 12(b)(3) for improper venue will be denied.

[2] Although the Plaintiff appears to rely on Title VII as a basis for this court's jurisdiction, *see* Compl. ¶ 1, in this action he does not allege discrimination based on his race. Title VII is relevant, however, because "[t]he remedies, procedures and rights set forth in [Title VII] . . . shall be available to any complaint under [the Rehabilitation Act] to any employee . . . aggrieved

According to the Plaintiff, he "developed disabilities directly related to being diagnosed with obstructive sleep apnea, narcolepsy and lower extremity lymphedema," which in turn led to "additional ailments . . . diagnosed as congestive heart failure, hypertension, sciatica and obsesity." *Id.* ¶ 3. "These ailments and remedies directly contributed to the Plaintiff falling asleep while on duty." *Id.* Further, these ailments "led to a physical change in form and appearance." *Id.* ¶ 4. For example, the Plaintiff wore compression garments because of the swelling of his lower extremities, and application of these garments "consumed several hours . . . [leading] to the Plaintiff using unscheduled leave and appearing late for work." *Id.* These garments "also affected the type of clothing" the Plaintiff could wear, such that he wore "only casual attire" notwithstanding the dress code of the "professional atmosphere" in which he worked. *Id.* Frequent medical appointments caused him to deplete annual and sick leave. *Id.*

The FBI allegedly began to discriminate against the Plaintiff in June 2004 "in the form of leave reprimands, withholding productive assignments, withholding incentive awards, denial of training, [and] suspension of clearance." Compl. ¶ 2. The Plaintiff "was eventually placed on administrative review" because he "was insubordinate and failed to perform prescribed duties." *Id.* ¶ 5. His career with the FBI ended upon his termination on October 26, 2008. *Id.* ¶ 2.

On November 2, 2009, the Plaintiff contacted an EEO Counselor. Mem. of P. & A. in Supp. of Mot. to Dismiss, or in the Alternative, for Summ. J. ("Def.'s Mem."), Ex. 4 at 10.[3] He sought counseling because of discrimination "based on physical disabilities (Sleep Apnea – Day time Somnolence and Primary Lymphodema [sic] and his race (Black) when he was issued a

---

by the final disposition of such complaint." 29 U.S.C. § 794a(a)(1); *see* 29 C.F.R. § 1614.103(a).

[3] The Defendant's Exhibit 4 is the Complaint Correspondence File for the Plaintiff's EEO complaint, Agency # FBI-2010-00031. The documents therein are sequentially numbered, and the Court adopts the page numbers as the Defendant designates them.

letter of dismissal from the rolls of the FBI Philadelphia Field Office" on October 26, 2008. *Id.*; *see id.* at 13. He sought reinstatement, transfer to the FBI's Washington Field Office, and reinstatement of his security clearance. *Id.* at 12.

Initially the Plaintiff "was not aware that he . . . had an . . . [EEO] Complaint." Def.'s Mem., Ex. 4 at 13. During a "phone conversation with a close friend at the Philadelphia Division in September 2009," the Plaintiff learned that "there were several other employees affected by medical issues that led to them being tardy, fall[ing] asleep while on duty and [being] excluded from collateral office duties." *Id.* at 5. He further "learned that these employees were allowed to ultimately retire while [he] was terminated." *Id.* These were facts "discover[ed] . . . subsequent to [his] being suspended," and he felt that he "was unjustly treated because of not only [his medical] conditions, but [also] because [he] was not related to someone in favor at the office." *Id.*

The complaint was not resolved informally, and the "Notice of Right to File was issued on November 16, 2009." Def.'s Mem., Ex. 2 (Letter to plaintiff from Vontell D. Frost-Tucker, Director, Equal Employment Opportunity Staff, Justice Management Division, U.S. Department of Justice, dated February 22, 2010) at 1; *see id.*, Ex. 4 at 16. On December 1, 2009, the Plaintiff "filed a formal Equal Employment Opportunity (EEO) complaint of discrimination against the [FBI]." Compl. ¶ 1. He alleged that the FBI discriminated against him on the basis of his physical disability when, on October 26, 2008, [he was] dismissed from [his] employment with the FBI's Philadelphia Field Office." Def.'s Mem., Ex. 4 at 3. The FBI acknowledged in writing its receipt of the Plaintiff's formal discrimination complaint. *Id.* at 18.

On January 14, 2010, an EEO Specialist contacted the Plaintiff by e-mail "to request clarification with regard to [his EEO] complaint." Def.'s Mem., Ex. 4 at 24. Based on the date

3

of the Plaintiff's termination, the EEO Specialist stated that he was "required to make contact with an EEO Counselor on or before December 10, 2008," or within 45 days of the effective date of the personnel action, yet he "first initiated EEO contact on November 2, 2009, approximately 11 months after the . . . deadline . . . for doing so." *Id.* She asked the Plaintiff to respond to two questions:

> 1.) Were you aware [of] the 45-day time limit requirement to contact an EEO Counselor if you felt that you [had] been discriminated against based on race, color, religion, sex, national origin, age or disability?
> 2.) If yes, why did you not initiate contact with an EEO Counselor within the required time limit? Please provide an explanation.

*Id.* The Plaintiff responded via e-mail as follows:

> Yes I was aware that there is a 45-day time limit requirement to contact an EEO Counselor for filing discrimination cases.
>
> * * *
>
> I did not initiate contact with an EEO counselor within the required time because I was not aware of the discriminating acts being committed. To clarify, when I was terminated on October 26, 2008, I was not aware that I was not afforded the same considerations given to other employees with medical impairments. I learned on October 2, 2009 that several employees, with medical impairments that were affected in similar ways as I, were allowed to continue employment with the Philadelphia Field Office. Not only were they allowed to continue employment, they were afforded special considerations allowing shift changes and position reassignment. In learning of these instances, I also learned that the other employees were white women. I would like to ammend [sic] my complaint to also include race and sex along with disability.

*Id.*, Ex. 4 at 21-22.

The FBI issued its final determination on February 22, 2010. *See* Def.'s Mem., Ex. 2. The agency explained that "the time limitation period is . . . triggered [when] a complainant reasonably suspects discrimination; all the facts [supporting] a claim of discrimination need not

be apparent or obtained by the complainant prior to initiating contact" with an EEO counselor. *Id.*, Ex. 2 at 2. A complainant "should suspect discrimination at the time of occurrence" of an event such as a termination. *Id.* at 3. The FBI concluded that the Plaintiff "should have had a reasonable suspicion of discrimination at the time of the adverse action alleged," and that his failure to timely initiate contact with an EEO counselor rendered his discrimination complaint untimely. *Id.* Accordingly, the FBI dismissed the Plaintiff's complaint. *Id.* at 4.

The Plaintiff filed this lawsuit on May 13, 2010.[4] He demands a declaratory judgment, reinstatement, assignment to either the Washington or the Baltimore Field Office, restoration of sick leave and annual leave, compensatory and punitive damages, and costs of this action. Compl. ¶ 7.

## II. DISCUSSION

The Defendant moves for summary judgment on the ground that the Plaintiff failed to exhaust his administrative remedies prior to the filing of this lawsuit. Mot. to Dismiss, or in the Alternative, for Summ. J. at 1.

There are "detailed procedures for the administrative resolution of discrimination complaints, including a series of time limits for seeking informal adjustment of complaints [and] filing formal charges," set forth in regulations promulgated by the EEOC, and "[c]omplainants must timely exhaust these administrative remedies before bringing their claims to court." *Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) (citations omitted). A complainant pursuing a claim under either Title VII or the Rehabilitation Act abides by the same federal regulations with respect to the processing of his discrimination claim by a federal agency. *See*

---

[4] Although the docket reflects the filing of the complaint on May 25, 2010, the Clerk of Court received the complaint, accompanied by the Plaintiff's application to proceed *in forma pauperis*, on May 13, 2010, as reflected in the date stamp on the first page of each original document.

29 C.F.R. §§1614.103(a), 1614.104(a); *see also Heard v. U.S. Dep't of State*, No. 08-2123, 2010 WL 3700184, at *6 (D.D.C. Sept. 17, 2010) (applying requirements of 29 C.F.R. § 1615.105(a) to claims under both Title VII and the Rehabilitation Act); *Wilderson v. Snow*, No. 04-0708, 2006 WL 571930, at *2 (D.D.C. Mar. 7, 2006) ("In addition to claims brought under Title VII, the administrative procedures established by the EEOC apply to claims brought under the Rehabilitation Act.").[5]

A complainant's first obligation is to "consult a Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). To this end, he "must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). The regulation provides for an extension of this 45-day time limit if:

> the individual shows that he . . . was not notified of the time limits and was not otherwise aware of them, that he . . . did not know and reasonably should not have . . . known that the discriminatory matter or personnel action occurred, that despite due diligence he . . . was prevented by circumstances beyond his . . . control from

---

[5] Remedies for a violation of the Rehabilitation Act are available "to any employee . . . aggrieved by the final disposition of [his discrimination] complaint" under Title VII. 29 U.S.C. § 794a(1). A complainant who brings a discrimination claim under the Rehabilitation Act must exhaust his administrative remedies before filing a lawsuit, and his failure to do so operates as a bar to a federal district court's jurisdiction. *Spinelli v. Goss*, 446 F.3d 159, 162 (D.C. Cir. 2006) (finding that "[t]he district court . . . should have dismissed [the Plaintiff's] Rehabilitation Act claim for lack of jurisdiction on the ground that he failed to exhaust his administrative remedy" because "[s]uch jurisdictional exhaustion, as we have called it, may not be excused") (quotation marks and citations omitted). The Plaintiff brings this action after having received the FBI's final determination of his discrimination complaint, and therefore he has exhausted his administrative remedies for purposes of establishing the Court's subject matter jurisdiction. *See Perry v. U.S. Dep't of State*, 669 F. Supp. 2d 60, 64 (D.D.C. 2009) ("That the [agency] rejected [plaintiff's] administrative complaint as untimely because he failed to initiate contact with an EEO counselor within 45 days as 29 C.F.R. §1614.105(a)(1) requires, does not mean that the Court lacks jurisdiction because there was no administrative complaint and thus no final disposition of one.") (citations and internal quotation marks omitted).

> contacting the counselor within the time limits, or for other reasons
> considered sufficient by the agency.

29 C.F.R. § 1614.105(a)(2).

"[T]he administrative time limits created by the EEOC erect no jurisdictional bars to bringing suit. Rather, functioning like statutes of limitations, these time limits are subject to equitable tolling, estoppel, and waiver." *Bowden*, 106 F.3d at 437; *see Jarrell v. U.S. Postal Serv.*, 753 F.2d 1088, 1091 (D.C. Cir. 1985) ("[A] a timely administrative charge is a prerequisite to initiation of a Title VII action in the District Court."); *Perry v. U.S. Dep't of State*, 669 F. Supp. 2d 60, 64 & n.4 (D.D.C. 2009). A complainant's failure to exhaust administrative remedies is an affirmative defense which the Defendant must plead and prove. *See Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985). If the Defendant meets his burden, the Plaintiff "then bears the burden of pleading and proving facts supporting equitable avoidance of the defense." *Bayer v. U.S. Dep't of the Treasury,* 956 F.2d 330, 333 (D.C. Cir. 1992); *see Bowden*, 106 F.3d at 437. The court will exercise its "equitable power to toll the statute of limitations . . . only in extraordinary and carefully circumscribed instances," *Mondy v. Sec'y of the Army*, 845 F.2d 1051, 1057 (D.C. Cir. 1988), and application of the doctrine of equitable tolling is solely within the court's discretion, *see Smith-Haynie v. District of Columbia,* 155 F.3d 575, 579 (D.C. Cir. 1998).

The Plaintiff's discrimination complaint arises from his termination, and termination is "[a] discrete . . . discriminatory act [which] occurred on the day that it happened," *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002) (internal quotation marks omitted); *see Coppinger-Martin v. Solis*, 627 F.3d 745, 749 (9th Cir. 2010) (concluding that the statute of limitations began to run when the complainant learned of her actual injury, i.e., the decision to terminate her employment); *Gordon v. Office of the Architect of the Capitol*, No. 09-1262, 2010

WL 4568832, at *8 (D.D.C. Nov. 12, 2010) (concluding that the limitations period began to run on the date the complainant was informed that she had not been selected for a position). According to the Defendant, "the undisputed record reveals that [the Plaintiff] failed to contact an EEO counselor within 45 days of his termination," Def.'s Mem. at 8, and that he "fails to present a scintilla of evidence that he falls within the limited exceptions to the 45-day limit," *id.* at 9.

The Plaintiff responds by asserting that "mitigating circumstances" exist. Resp. to Def.'s Mot. to Dismiss or in the Alternative, for Summ. J. at 1. He states:

> According to defense Exhibit (2) page (5), this document clearly outlines the mitigating circumstance that the plaintiff used as a guide for filing this procedure. In compliance with the rules stated in this exhibit, plaintiff understood that his administrative remedies have been exhausted fully under Title VII . . . and the Rehabilitation Act . . . . Plaintiff also understood that . . . he should name the Attorney General . . . as the defendant and failure to do so would result in dismissal of the filing. Plaintiff understood that naming the Attorney General as the defendant, the proper venue would be United States District Court, District of Columbia. In summary, plaintiff would like to motion for summary judgment based on the submissions of records used as evidence for the findings.

*Id.* at 1-2. The exhibit to which the Plaintiff refers is the FBI's final determination of his discrimination claim, specifically the notice of his right to bring a civil action "in an appropriate United States District Court." Def.'s Mem., Ex. 2 at 5. Among other information, the notice sets forth the time limits within which a lawsuit must be filed and instructs that failure to name the Attorney General as the defendant to a lawsuit may result in its dismissal. *Id.*

The Plaintiff's focus on the technical details of filing a lawsuit is misplaced. The Defendant's argument is not related to the timeliness of the filing of his complaint in this court or to the naming of the proper defendant. Rather, the Defendant argues that the Plaintiff's initial

8

contact with an EEO Counselor was untimely, and the Plaintiff's opposition fails to address the argument at all.

Relevant to this discussion is the e-mail exchange initiated on January 14, 2010 by the EEO Specialist. *See* Def.'s Mem., Ex. 4 at 21-22. The Plaintiff explains that he "did not initiate contact with an EEO counselor within the required time because [he] was not aware of the discriminating acts being committed." *Id.* at 21. Specifically, the Plaintiff states that he "learned on October 2, 2009 that several employees [who had] medical impairments [and] were affected in similar ways as [he] were allowed to continue employment . . . [and] were afforded special considerations." *Id.* at 22. These employees were white women. *Id.* In other words, although the Plaintiff knew of his termination on October 26, 2008, he claims not to have understood the possible discriminatory motive for his termination until October 9, 2009. Following the Plaintiff's argument, his initial contact with an EEO Counselor, which occurred within 45 days of October 9, 2009, was timely.

"[N]otice or knowledge of discriminatory motivation is not a prerequisite for a cause of action to accrue . . . . On the contrary, it is knowledge of the adverse employment decision itself that triggers the running of the statute of limitations." *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 558 (10th Cir. 1994). The Plaintiff's claim accrued on the date of his termination. *See McPhillips v. Mineta*, No. 07-cv-00077, 2008 WL 596133, at *5 (D. Colo. Feb. 29, 2008) (finding that a discrimination claim accrued on the date plaintiff became aware of the adverse employment action, not on the date she became aware of an alleged discriminatory motive); *McCants v. Glickman*, 180 F. Supp. 2d 35, 42 (D.D.C. 2001) (finding that the discrimination claim of a plaintiff who "suspected discrimination during [his] interview" accrued on the date of the interview); *cf. Salcedo v. Town of Dudley*, 629 F. Supp. 2d 86, 98 (D. Mass. 2009) ("It is true

that plaintiff did not know whether any similarly-situated persons (other than her husband) existed -- but at that point she was put on notice of the existence of a potential claim, and she had three years in which to conduct an investigation."). That the Plaintiff lacked information on October 26, 2008 as to a potential discriminatory motive for his termination does not itself justify a delay in initiating contact with an EEO Counselor. *See Stepney v. Naperville Sch. Dist.*, 203, 392 F.3d 236, 240 (7th Cir. 2004) (rejecting appellant's argument that he did not have sufficient information to file an EEOC charge when the alleged violation occurred); *Wastak v. Lehigh Valley Health Network*, 342 F.3d 281, 287 (3d Cir. 2003) (concluding that complainant's "injury was complete and discovered when [his former employer] terminated his employment," not months later when "he learned that he had been replaced by a younger employee"); *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1186-87 (10th Cir. 2003) (rejecting argument that the alleged employment discrimination "did not accrue until [the complainant] discovered AOL's reason for refusing to hire him -- the discriminatory hiring policy").

The Plaintiff neither alleges facts, articulates an argument, nor points to evidence in the record to support the application of equitable tolling. *See Greer v. Paulson*, 505 F.3d 1306, 1316 (D.C. Cir. 2007) (granting summary judgment for the agency where the complainant neither offered evidence that she met with an EEO counselor within 45 days of her termination nor presented a basis for tolling the 45-day period). He does not, for example, argue that the Defendant "engaged in affirmative misconduct, or misled [him] about the running of a limitations period," *Washington v. Wash. Metro. Area Transit Auth*, 160 F.3d 750, 752-53 (D.C. Cir. 1998) (quotations and bracket omitted), claim to have had no notice of the 45-day limit, *see Harris v. Gonzales*, 488 F.3d 442, 444 (D.C. Cir. 2007), or otherwise describe "extraordinary

and carefully circumscribed circumstances," *Norman v. United States,* 467 F.3d 773, 776 (D.C. Cir. 2006), which might warrant this equitable remedy.

Absent any basis to excuse his untimely contact with the EEO Counselor, the Plaintiff's failure to exhaust his administrative remedies prior to filing this lawsuit requires dismissal of his complaint. *See Rafi v. Sebelius*, 377 Fed. Appx. 24, 25 (D.C. Cir. 2010) (per curiam) (affirming dismissal of Title VII and ADEA claims as to positions for which the appellant applied because he failed to contact an EEO counselor within the 45-day time period); *Dorns v. Geithner*, 692 F. Supp. 2d 119, 130 (D.D.C. 2010) (concluding that the plaintiff failed to exhaust certain Title VII claims because she contacted an EEO Counselor more than 16 months after the alleged discriminatory actions occurred); *Heard*, 2010 WL 3700184, at *6 (dismissing disability discrimination claim because of the plaintiff's failure to consult an EEO Counselor within 45 days of the alleged discriminatory action).

## III. CONCLUSION

The Court concludes that the Plaintiff failed to exhaust his administrative remedies, and, therefore, grants the Defendant's motion for summary judgment. An Order accompanies this Memorandum Opinion.

BERYL A. HOWELL
United States District Judge

DATE: March 2, 2011